**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

RICHARD ANTHONY STRONG,

      Petitioner,                  Civil No. 2:19-CV-11448
                                      HONORABLE ARTHUR J. TARNOW
v.                                UNITED STATES DISTRICT JUDGE

NOAH NAGY,[1]

      Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND GRANTING A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL _IN FORMA PAUPERIS_

      Richard Anthony Strong, ("petitioner"), confined at the G. Robert Cotton Correctional Facility in Jackson, Michigan, through his attorney, Mary Chartier, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his conviction for first-degree murder, M.C.L.A. 750.316(C); possession of a firearm by a felon, M.C.L.A. 750.224(F); and possession of a firearm with intent to commit a felony (felony firearm), M.C.L.A. 750.227b. For the reasons that follow, the petition for a writ of habeas corpus is **DENIED.** The Court will issue petitioner a certificate of appealability and an application to proceed on appeal _in forma pauperis._

_____

      [1]The Court amends the caption to reflect the current warden of petitioner's incarceration.

## I. Background

Petitioner was convicted of the above offenses following a jury trial in the Ingham County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> This conviction arises out of the shooting and death of Ygnacio Bermudez Jr. (the victim) outside of the Loft nightclub (the bar) in Lansing, Michigan. The crucial issue at trial was the correct identity of the shooter. An altercation occurred between the victim and defendant at a bar. When the victim later left the bar, he was shot multiple times outside the bar by a man, identified by witnesses as defendant, and died at the scene. The prosecution presented testimony of multiple witnesses who identified defendant as the shooter. Evidence was also introduced concerning the defendant's access to a handgun and cartridges of the type used in the shooting. Other testimony was presented concerning defendant and Pierce's flight to North Carolina, and defendant's attempt to hide himself by posing as Pierce's ex-husband. Defendant was apprehended while living with Pierce in North Carolina.

*People v. Strong*, No. 315080, 2016 WL 1445228, at *1 (Mich. Ct. App. Apr. 12, 2016).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 500 Mich. 898, 887 N.W.2d 404 (2016). Petitioner then filed a motion for relief from judgment which was denied. *People v. Strong*, No. 12-403-FC (Ingham Cty. Cir. Court Jan. 31, 2018). The Michigan appellate courts denied petitioner relief. *People v. Strong*, No. 342494 (Mich. Ct. App. Oct. 10, 2018); *lv. den.* 503 Mich. 1019, 925 N.W.2d 852 (2019).

2

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Mr. Strong was denied his due process rights, his right to confront the witnesses against him, his right to testify on his own behalf, and his constitutional right to the effective assistance of counsel.

II. Trial counsel engaged in a pattern of other major deficiencies, making a series of errors that deprived Mr. Strong of a fair trial, due process, and his Sixth Amendment right to counsel.

III. Trial counsel failed to produce an expert witness who would have testified to the unreliability of the testimony of three eyewitnesses picked out of a crowd of bystanders where there was no physical evidence connecting Mr. Strong to the crime.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas

cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. Habeas relief should be denied as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

Petitioner's three claims were raised in his post-conviction motion for relief from judgment.  In reviewing a claim under the AEDPA's deferential standard of review, this Court must review "the last state court to issue a reasoned opinion on the issue." *Hoffner v. Bradshaw*, 622 F.3d 487, 505 (6th Cir. 2010)(quoting *Payne v. Bell*, 418 F.3d 644, 660 (6th Cir. 2005).  The Michigan Court of Appeals and the Michigan Supreme Court both denied petitioner's post-conviction application for leave to appeal in unexplained one-sentence orders.  Accordingly, this Court must "look through" these decisions to the Ingham County Circuit Court opinion denying the motion for relief from judgment, which was the last state court to issue a reasoned opinion.  Then, the Court can decide whether that court's adjudication of petitioner's claims was "contrary to," or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See Hamilton v. Jackson*, 416 F. App'x 501, 505 (6th Cir. 2011).  Although the state court judge procedurally defaulted the claims pursuant to M.C.R. 6.508(D)(3), because petitioner failed to show cause and prejudice for failing to raise these claims on his appeal of right, he also denied petitioner's post-conviction claims on the merits; thus, the AEDPA's deferential standard of review applies to his opinion. *See Moritz v. Lafler*, 525 F. App'x 277, 284 (6th Cir. 2013).[1]

---

[1] Respondent urges this Court to procedurally default these claims because petitioner failed to show cause and prejudice, as required by M.C.R. 6.508(D)(3),

## III.  Discussion

### A.  Claim # 1. The ineffective assistance of counsel/right to confrontation claim.

Petitioner first contends that trial counsel was ineffective when he called an investigator who provided unfavorable testimony after petitioner testified at trial.

Petitioner submits that the the investigator provided privileged information when he testified that petitioner told him to cease looking for Ashley Parker. Petitioner, against advice of counsel, chose to testify at trial.  Petitioner raised an alibi defense that he was with Ashley Parker, who asked him out to breakfast, at the time of the shooting.  Following petitioner's trial testimony, defense counsel called an investigator to testify in support of petitioner's alibi.  The investigator testified that he was hired to find Ashley Parker and when she failed to return his phone calls, petitioner told him to stop looking for her.  Petitioner submits that the trial testimony provided by the investigator was a breach of the attorney-client

---

for failing to raise them on his appeal of right.  Petitioner argues that appellate counsel was ineffective for failing to raise the three claims on his appeal of right and alleges in his second claim that trial counsel was ineffective for failing to object to the admission of hearsay testimony.  Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).  Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of the defaulted claims, it would be easier to consider the merits of the claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).  Petitioner could not procedurally default his ineffective assistance of appellate counsel claim because post-conviction review was the first opportunity he had to raise this claim. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

privilege and that trial counsel was ineffective when the investigator provided

unfavorable testimony.

To show that he was denied the effective assistance of counsel under

federal constitutional standards, a defendant must satisfy a two prong test.  First,

the defendant must demonstrate that, considering all of the circumstances,

counsel's performance was so deficient that the attorney was not functioning as

the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466

U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong

presumption that counsel's behavior lies within the wide range of reasonable

professional assistance. *Id.*  In other words, petitioner must overcome the

presumption that, under the circumstances, the challenged action might be sound

trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that

such performance prejudiced his defense. *Id.*  To demonstrate prejudice, the

defendant must show that "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different."

*Strickland,* 466 U.S. at 694.

The *Strickland* standard applies as well to claims of ineffective assistance

of appellate counsel. *See Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005).  The

Sixth Amendment guarantees a defendant the right to the effective assistance of

counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397

(1985).  However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

Petitioner alleges that trial counsel was ineffective by calling an investigator who gave damaging and privileged information.

The attorney-client privilege is a creation of the common law, not the federal constitution. *Sanborn v. Parker*, 629 F.3d 554, 575 (6th Cir. 2010)(quoting *Lange v. Young,* 869 F.2d 1008, 1012, n. 2 (7th Cir. 1989)).  Because federal habeas review is limited to violations of the United States Constitution or its laws and treatises, any violation of a habeas petitioner's attorney-client privilege would not warrant habeas relief. *Id.*  Any alleged violation of petitioner's attorney-client privilege is therefore not cognizable in federal habeas review.

The Court notes that mistaken identity was the defense presented at trial. Both the prosecutor and defense counsel presented in opening argument that identity was "the key issue in this case." (ECF 8-5, PageID.595).  Petitioner waived his right to remain silent and, without notice, presented an alibi defense that when he left the Loft Bar, he ran into a girl that he dated briefly named Ashley Parker.  Petitioner further testified that she asked if he would like to go to breakfast with her. (ECF 8-9, PageID.759).  An alibi defense was not raised until petitioner testified.  Off record, the court indicated that notice of an alibi defense

had not been provided. (*Id.*).  Petitioner was instructed to provide the prosecutor

with contact information for Ashley Parker, prior to resuming his testimony. (*Id.*).

Trial counsel also indicated that he had a phone number for Parker, hired an

investigator who could not make contact, and decided that he would not file a

notice of an alibi defense on a witness that he could not produce for trial. (*Id.* at

760).  The prosecutor indicated that petitioner put the alibi before the jury and

remarked that he would prefer to handle it through cross-examination, rather than

preclude petitioner from bringing his alibi defense.  In light of the prosecutor's

comments, the court allowed the testimony.(*Id.*). Petitioner then continued with

his testimony pertaining to Parker.  The record reflects that petitioner testified that

he became aware that he was implicated in the shooting at the Loft while driving

with Parker, that Parker brought him to a house in Detroit where he stayed two to

three weeks with his cousin.  Petitioner further testified that he then purchased a

bus ticket to go to North Carolina where he intended to gain employment to

obtain funds to hire an attorney. (*Id.* at 763).

The prosecutor cross-examined petitioner as to the trial testimony

pertaining to Ashley Parker.  On direct examination, petitioner testified that he left

the loft at 1:45 a.m. and went to Parker's car, where he went onto Facebook.

Based on the Facebook account of the shooting, he and Parker changed their

plans and petitioner went to his cousin's house in Detroit.  On cross-examination,

9

petitioner indicates that he left the Loft at 1:45 a.m., but concedes that the victim was murdered at 2:10 a.m. The cell phone calls to Lisa (petitioner's girlfriend) begin at 2:13 a.m. (*Id.* at 770). The entire time, petitioner insisted that he was with Ashley Parker, that she is his alibi, and that she can say that she was with petitioner at the time of the murder. (*Id.*).

Trial counsel called Bruce Erlandson, a private investigator, in support of petitioner's alibi defense. Counsel relied on Erlandson to explain Parker's absence. Erlandson testified that he had a cell phone number, made contact once with Parker, and then could not reach her by phone on the agreed upon time to speak. He further testified that without further information, Parker could be anywhere within the state of Kentucky. Mr. Erlandson testified that petitioner authorized him to discontinue looking for Ms. Parker. (*Id.* at 778-79).

The prosecutor then called Investigator Steve McClean as a rebuttal witness. McClean testified that he became aware of petitioner's alibi defense the previous day at trial. McClean further testified that he was never asked by petitioner or petitioner's investigator to search for Ashley Parker. (ECF 8-10, PageID.783).

Following closing arguments the trial court judge called a recess and dismissed the jury. During the recess, the prosecutor informed the court that he left a message for Ashley Parker, who returned his call. She informed the

prosecutor that she was not with petitioner on the night of the murder, was in Georgetown, Kentucky, is still in Kentucky, and wanted to correct this issue. (*Id.* at 805).

Petitioner brought his ineffective assistance of counsel/right to confrontation claim in his motion for relief from judgment. The trial court judge found the claim procedurally defaulted for not having raised it in petitioner's direct appeal, but also found that counsel has "wide discretion regarding matters of trial strategy" and declined to substitute his judgment for that of trial counsel. (ECF 8-20, PageID.1166-1167). In regards to the confrontation claim, the trial court judge was "not persuaded that the investigator was bound by the attorney-client privilege," finding that "The scope of the attorney-client privilege is narrow, attaching only to confidential communications by the client to his advisor that are made for the purpose of obtaining legal advice." (internal citation omitted). The judge also found that in light of the overwhelming evidence against petitioner, "there was no reasonable likelihood that absent this portion of the private investigator's testimony Defendant would have been acquitted." (*Id.* at 1168, 1170).

The fact that a violation of attorney-client privilege might be a structural error does not mean that this Court can presume prejudice on the ineffective assistance of counsel claim. In the context of an ineffective assistance of counsel

claim, a defendant is required to show that he was prejudiced to obtain relief, even when the underlying claim involves structural error. *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1913-14 (2017).  The testimony provided by the investigator called by trial counsel was not privileged information.  Furthermore, numerous witnesses identified petitioner around the time of the shooting, many of the witnesses witnessed the shooting, petitioner abandoned the Cadillac that he was seen driving far from the crime scene, cell phone records contain calls between petitioner and Lisa just after the shooting, petitioner fled first to Detroit and then to North Carolina where he took on a new identity as the ex-husband of Lisa Pierce Potts and found employment.  In light of the overwhelming evidence against petitioner, the small portion of the investigator's testimony did not prejudice petitioner.  Petitioner is not entitled to relief on his first claim.

### B.  Claim # 2. The numerous other instances of ineffective assistance of counsel.

Petitioner alleges that trial counsel failed to properly investigate the case.

Trial counsel elicited testimony from Sarah Sandlin in connection with an incident in which the police were called to her home because petitioner allegedly held a gun to her head. (ECF 8-7, PageID.671-672).  Petitioner does not set forth any argument as to how trial counsel failed to investigate his case.  In regards to the testimony elicited from Sarah Sandlin, "Courts generally entrust

cross-examination techniques, like other matters of trial strategy, to the

professional discretion of counsel." *Dell v. Straub*, 194 F. Supp. 2d 629, 651 (E.D.

Mich. 2002). "Impeachment strategy is a matter of trial tactics, and tactical

decisions are not ineffective assistance of counsel simply because in retrospect

better tactics may have been available." *Id.*

The trial court judge in ruling on petitioner's motion for relief from judgment

rejected this claim finding:

> This question was intended to show that Defendant was
> not a person who would carry a gun with the inference that
> he, therefore, would not have been able to shoot the
> victim. Mr. Watson then asked Ms. Sandlin if anyone had
> ever claimed Defendant had a gun, possibly because he
> was aware of the prior domestic incident involving her and
> Defendant. Ms. Sandlin testified that her sister had
> (falsely) reported to police that Defendant possessed a
> gun. There was nothing improper about this line of
> questions because Mr. Watson was attempting to show,
> through someone familiar with his habits, that Defendant
> did not carry a gun.
>
> The prosecutor then asked Ms. Sandlin if she had told
> police that Defendant during that incident had put a gun to
> her head and she denied making such a statement. Mr.
> Watson objected to the question and the trial court
> overruled the objection. Mr. Watson then asked for, and
> received, permission to re-cross Ms. Sandlin on this
> subject. Mr. Watson questioned Ms. Sandlin about the
> circumstances of the incident and how her sister falsely
> reported that Defendant had a gun. The prosecutor
> attempted to impeach this testimony by Officer Hough
> testifying that he investigated the incident and it was Ms.
> Sandlin and not her sister who reported that Defendant

had a gun at that time. Mr. Watson did not object to this testimony, but he cross-examined the officer attempting to show that the officer was mistaken and that he received the (false) information from Ms. Sandlin's sister. The decisions whether and how to cross-examine witnesses are matters of trial strategy. Ineffective assistance of counsel can take the form of a failure to cross examine witnesses only if the failure deprives the defendant of a substantial defense.

Mr. Watson's decision to question Ms. Sandlin about Defendant's habit of not carrying a gun was a matter of trial strategy intended to assist Defendant's defense. Although this strategy also allowed the prosecution to introduce contrary evidence, Mr. Watson lessened the significance of that contrary evidence by his cross-examination of Officer Hough. The Court finds that this testimony is not grounds that entitle Defendant to a new trial because it was trial strategy and did not deprive Defendant of a substantial defense.

*People v. Strong*, No. 12-403-FC, * 10-11 (Ingham Cty. Cir. Court Jan. 31, 2018).

Counsel's performance in eliciting allegedly prejudicial testimony from a witness was not deficient, so as to support petitioner's ineffective assistance of counsel claim when the questions were part of a legitimate strategy to cast doubt on the prosecution's case or the witness' credibility. *See Campbell v. U.S.*, 364 F.3d 727, 734-35 (6th Cir. 2004); *see also Urban v. Ohio Adult Parole Auth.*, 116 F. App'x 617, 622 (6th Cir. 2004).

Petitioner claims that trial counsel was ineffective by failing to object to hearsay testimony from Carol Pierce and Anthony Harris pertaining to a missing

gun.  Carol Pierce testified that petitioner moved in with her daughter in July of

2011 and after the shooting, her daughter's gun was missing. (ECF 8-7,

PageID.683).  The prosecutor called Anthony Harris, the father of one of Pierce's

children, who testified that he became aware that Lisa Pierce Potts owned a gun

and it was missing. (ECF 8-8, PageID.718).

Lisa Pierce Potts testified at the preliminary examination that her pistol was

missing. (ECF 8-2, PageID.444).  She invoked her 5th Amendment right and did

not testify at trial. (ECF 8-9, PageID.738).  Counsel may not have objected to the

testimony from Carol Pierce and Harris so as not to draw attention to the

testimony, a legitimate trial strategy. *See Schauer v. McKee*, 401 F. App'x 97,

101 (6th Cir. 2010).  Furthermore, Todd Maxwell, an employee at Moose Creek

Sporting Goods, testified that he sold Lisa Pierce Potts the gun (and the same

ammunition used in the murder). (ECF 8-7, PageID.692-695).  Detective McClean

testified that Lisa reported her gun missing the day after the murder. (ECF 8-10,

PageID.784).  The admission of any alleged hearsay testimony from Pierce and

Harris, pertaining to the gun, was harmless because it was cumulative to the

other admissible evidence.

Petitioner alleges that trial counsel was ineffective by failing to object to the

admission of a demonstrative firearm.

A firearm similar to the gun purchased by Lisa Pierce Potts was admitted into evidence for demonstrative purposes only. (ECF 8-7, PageID.694). When the real murder weapon is unavailable, a weapon entered into evidence for demonstrative purposes is common and admissible. *See, e.g. United State v. Aldaco*, 201 F.3d 979, 986-87 (7th Cir. 2000). Counsel was not deficient by failing to raise a futile objection. *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014).

Petitioner contends that trial counsel was ineffective by failing to object to the prosecutor's comment in opening argument advising the jury that Ms. Medrano would testify that petitioner had evil eyes; "She'll tell you what stands out are those eyes, those cold, killer, evil eyes." (ECF 8-5, PageID.590). The prosecutor also claimed that "Brian French will also testify that one thing that was distinctive about the Defendant that he remembers, those killer eyes. Those cold, evil killer eyes." (*Id.* at 591)

"An opening statement is designed to allow each party to present an objective overview of the evidence intended to be introduced at trial." *United States v. Burns*, 298 F.3d 523, 543 (6th Cir. 2002)(citing *United States v. Brockington*, 849 F.2d 872, 875 (4th Cir. 1988)). It is inappropriate for a prosecutor to "use the opening statement to poison the jury's mind against the

defendant or to recite items of highly questionable evidence." *Id.* (internal

quotation marks and citations omitted).

The prosecutor did not commit misconduct by referring to petitioner's eyes

because when viewed in context, the prosecutor was simply setting forth the

evidence he would present in his case and what it would prove. *See U.S. v.*

*Jewell,* 16 F. App'x 295, 299 (6th Cir. 2001). There was nothing improper about

the prosecutor's remarks in his opening argument because he was merely

summarizing what he expected the evidence to show in this case. *See U.S. v.*

*McCaskill*, 62 F. App'x 71, 76 (6th Cir. 2003). Ms. Medrano identified petitioner

as the individual that she spoke face-to-face with just prior to the murder. She

identified petitioner as the shooter. Medrano was asked relevant questions

pertaining to petitioner's description. Medrano testified that she took note of

petitioner's nose and eyes and testified that his eyes were "evil." (ECF8-5,

PageID.598-599). Furthermore, the trial judge advised the jurors at the beginning

of trial that the lawyers' opening arguments were not evidence (*Id.* at 587). The

trial court's instructions that the opening arguments were not evidence cured any

possible prejudice in this case. *Burns,* 298 F.3d at 543.

Petitioner contends that trial counsel was ineffective by failing to admit a

videotape to show his car was not involved in the shooting.

Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). Petitioner's claim is conclusory because he failed to offer evidence that the green car contained within this videotape was his vehicle.

Cheryl Masseau testified that at approximately 2:30 a.m., on the night of the shooting, she saw a green Cadillac parked outside her house, several men got out, the men did something to her trash can, and then she saw them walk away and leave the car. Two days later, the car was still parked there, so she called the police. Two days after calling the police, Detective McClean responded and the police seized the car. (ECF 8-7, PageID.674 676). Petitioner has not established that the green car in the security footage was the same green Cadillac. A defense counsel has no obligation to present evidence or testimony that would not have exculpated the defendant. *See Millender v. Adams,* 376 F.3d 520, 527 (6th Cir. 2004)(internal quotation omitted). Petitioner is not entitled to relief on his second claim.

## C. Claim # 3. The expert witness claim.

Petitioner alleges that trial counsel was ineffective by failing to call an expert witness to testify about the unreliability of eyewitness identification.

"No precedent establishes that defense counsel must call an expert witness about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth Amendment." *Perkins v. McKee*, 411 F. App'x 822, 833 (6th Cir. 2011). Moreover, although counsel did not call an expert witness on the problems of eyewitness identification, trial counsel vigorously cross-examined the witnesses in connection with petitioner's identification. Medrano testified that she had a 20 minute, face-to-face, conversation with petitioner. She testified that petitioner wore a silver chain and had on black shoes. (ECF 8-2, PageID.599). Medrano further testified that when petitioner left the bar, he had on a black hoodie and that the hood was up. (*Id.* at 603-604). On cross-examination, Medrano conceded that she testified during the preliminary examination that petitioner wore a light grey hoodie. (*Id.* at 617-618). Medrano admitted during cross-examination that she could not recall the clothing petitioner wore or the color of the gun. (*Id.*). Vincent Beard testified that he was also a patron at the Loft bar on the night of the shooting and that petitioner wore a gray hoodie. (*Id.* at 623-626). On cross-examination, Beard testified that when shown a photo array, he was not confident to sign his initials to an identification. Beard testified that petitioner had a hoodie on and he was not sure if petitioner had a full beard or moustache. (*Id.* at 628). When asked if anything stood out about the shooter, Beard testified that "nothing stands out." (*Id.* at 629). Brian

French testified that he observed petitioner exit the bar, look around and then go back inside. Ten minutes later French observed petitioner exit the bar behind a man and woman. He then witnessed petitioner shoot the man. According to French, petitioner as wearing "black pants, a black hoodle, some tan boots, the Timberland style boots. And wearing a dark hat that had like these earflaps that kind of come down, kind of furry around It." (ECF 8-6, PageID.646). French further testified that petitioner did not wear any distinctive jewelry. (ECF 8-6, PageID.653).

Trial counsel's focus on the discrepancies in the witness identification was reasonable trial strategy. Petitioner was not denied the effective assistance of counsel due to trial counsel's failure to seek the assistance of an expert witness on identification, where counsel elicited testimony to discredit the victim's identification testimony. *See Greene v. Lafler,* 447 F. Supp. 2d 780, 794-95 (E.D. Mich. 2006). Petitioner is not entitled to relief on his final claim regarding counsel's failure to call an expert witness.

### A certificate of appealability.

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction.[2] 28 U.S.C. §§ 2253(c)(1)(A),(B). A court may issue a COA

---

[2]Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll.

"only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.

The Court concludes that jurists of reason could find its assessment of the constitutional claims debatable or wrong. *See Slack*, 529 U.S. at 484-85. Any doubt regarding whether to grant a COA from the denial of a petition for federal habeas relief is resolved in favor of the habeas petitioner, and the severity of the penalty may be considered in making that determination. *See Newton v. Dretke,* 371 F.3d 250, 253 (5th Cir. 2004). Any doubts regarding the issuance of a COA

---

§ 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.

in this case should be resolved in petitioner's favor, in light of the life sentence that he is serving.  The Court thus issues petitioner a COA.

Petitioner is also granted leave to proceed on appeal *in forma pauperis*, as any appeal would not be frivolous.  A court may grant *in forma pauperis* status if the court finds that an appeal is being taken in good faith. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App.24 (a); *Foster v. Ludwick*, 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

## IV. CONCLUSION

For the reasons stated above, this Court concludes that Petitioner Strong is not entitled to federal-habeas relief on the claims presented in his petition.

Accordingly, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE**. (Dkt. # 1.)

**IT IS FURTHER ORDERED** that the Court issues petitioner a certificate of appealability and leave to proceed on appeal *in forma pauperis*.

  s/Arthur J. Tarnow
**HON. ARTHUR J. TARNOW**
UNITED STATES DISTRICT COURT

DATED: November 27, 2019